UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **BRANDON S. LAVERGNE (# 424229)** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-1696-JWD-RLB** |
| **KEITH STUTES, ET AL.** | |

*Consolidated with:*

| | |
|---|---|
| **BRANDON S. LAVERGNE (# 424229)** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-693-JWD-RLB** |
| **KEITH STUTES, ET AL.** | |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on September 10, 2019.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**BRANDON S. LAVERGNE (# 424229)**            **CIVIL ACTION**

**VERSUS**                                                              **NO. 17-1696-JWD-RLB**

**KEITH STUTES, ET AL.**

*Consolidated with:*

**BRANDON S. LAVERGNE (# 424229)**            **CIVIL ACTION**

**VERSUS**                                                              **NO. 18-693-JWD-RLB**

**KEITH STUTES, ET AL.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The *pro se* plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983 numerous defendants complaining that his constitutional rights were violated due to the imposition of an illegal sentence, and due to his classification resulting from the illegal sentence. He prays for monetary damages and injunctive relief.

Pursuant to 28 U.S.C. § 1915A, this Court is authorized to dismiss an action or claim brought by a prisoner who is asserting a claim against a governmental entity or an officer or employee of a governmental entity if satisfied that the action or claim is frivolous, malicious or fails to state a claim upon which relief may be granted. An action or claim is properly dismissed as frivolous if the claim lacks an arguable basis either in fact or in law. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992), *citing Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hicks v. Garner*, 69 F.3d 22, 24-25 (5th Cir. 1995).

A claim is factually frivolous if the alleged facts are "clearly baseless, a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional.'" *Id*. at 32-33. A claim

has no arguable basis in law if it is based upon an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998). The law accords judges not only the authority to dismiss a claim which is based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the factual allegations. *Denton v. Hernandez*, *supra*, 504 U.S. at 32. Pleaded facts which are merely improbable or strange, however, are not frivolous for purposes of § 1915. *Id*. at 33; *Ancar v. Sara Plasma, Inc.*, 964 F.2d 465, 468 (5th Cir. 1992).

A § 1915A dismissal may be made any time, but ideally as soon as practicable after docketing. In the instant matter, this case was recently reassigned to the undersigned Magistrate Judge in June of 2019. Accordingly, the Magistrate Judge now reviews the plaintiff's Complaint, as amended, pursuant § 1915A.

In his Complaint, as amended, the plaintiff alleges the following: On August 17, 2012, pursuant to a plea agreement, the plaintiff was sentenced to life in prison to be served in solitary confinement at Louisiana State Penitentiary ("LSP"). Defendants Doga, LeJeune, Stutes, Harson, Clause, Landry, Haney, and Hamilton were all involved in some aspect of the plea negotiations and resulting sentence.[1]

Defendant LeBlanc chose to carry out the illegal sentence, and defendant Cain implemented the plaintiff's sentence at LSP. While housed in solitary confinement, the plaintiff did not have direct access to the law library and had limited access to inmate counsel substitute and law books. As a result, two of the plaintiff's criminal appeals were rejected due to failure to comply with the state appellate court's rules, and the plaintiff filed numerous suits in federal which were dismissed and resulted in the plaintiff being unable to file additional suits without prepayment of fees.

---

[1] These defendants consist of a former judge, district attorneys, assistant district attorneys, and the plaintiff's counsel in his state criminal court proceedings.

Defendants LeBlanc and Cain were responsible for keeping the death row library properly updated and having inmate counsel substitute being properly trained in both criminal and civil law. The plaintiff filed a grievance regarding these issues and wrote letters to defendants LeBlanc and Cain, but no corrective action was ever taken.

The plaintiff attempted to seek relief in state court through the judicial review process which required him to file for review in the 19th Judicial District Court. Defendant Welborn charged the plaintiff several hundred dollars for "building fund fees" and processing fees. These fees were not disclosed to the plaintiff prior to filing and are not charged to the general public in the same manner. The plaintiff refused to pay these fees and the court refused to transfer his file to the state appellate court. However, the plaintiff was able to seek review in the state appellate court and the Louisiana Supreme Court.

In June of 2017, the plaintiff was moved from solitary confinement into a dorm in which the inmates were double bunked with limited security officers, resulting in inmates smoking tobacco and using drugs with no intervention from security. Due to the overcrowding, the dorms were filthy and contained strong odors. The double bunking and reduction of security policies were implemented by defendant Cain, and continued by defendant Vannoy. Defendant Benjamin is the former head of security and allowed the drug use and smoking to persist. Defendant LeBlanc failed to control the population count as required by statute. The plaintiff's first grievance regarding these issues was ignored at the first and second steps. The plaintiff's second grievance was exhausted.

In September of 2018, the plaintiff learned that his biological mother was dying. On October 15, 2018, the plaintiff attempted to escape in order to visit his mother in person. The plaintiff was caught and taken to "CCR." The plaintiff was not brought before the disciplinary board until 30 days later. The disciplinary board, consisting of defendants Smith and Curtier, found the plaintiff guilty of simple escape and sentenced him to "maximum death row CCR." The

plaintiff is the only inmate out of over 100 in CCR with this particular sentence. The plaintiff's disciplinary appeal was denied by defendant LeBlanc. While housed in CCR, the plaintiff has more restrictions than death row inmates.

The plaintiff's claims regarding the imposition of an alleged illegal sentence are barred under *Heck v. Humphrey,* 512 U.S. 477 (1994) because the plaintiff seeks monetary relief. More specifically, the plaintiff requests $100.00 per day for each day spent in solitary confinement at LSP due his allegedly illegal sentence. In *Heck,* the Supreme Court ruled that, in order to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. *Id.* at 486–87.

Accordingly, the Court must consider "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the Complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487. When success in a "§ 1983 damages action would implicitly question the validity of conviction or duration of sentence, the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence." *Muhammad v. Close,* 540 U.S. 749, 751 (2004).

In the present case, resolution of the plaintiff's claim in his favor, i.e., a determination that he is entitled to monetary damages because of the allegedly illegal sentence, would necessarily imply that his sentence was invalid. On June 17, 2019, the United States Court of Appeals for the Fifth

Circuit denied the plaintiff a certificate of appealability regarding the legality of his sentence. *See Lavergne v. Vannoy*, 18-30639 (5th Cir. 2019). Since he has failed to show that his sentence or period of confinement has been invalidated or called into question in any other proceeding, *Heck* suggests that the plaintiff's claims must be dismissed.[2]

Regarding the plaintiff's allegations that his constitutional rights have been violated due to the defendants' alleged interference with his right of access to the courts, a substantive right of access to the courts has long been recognized. *Lewis v. Casey,* 518 U.S. 343, 347 (1996), *citing Bounds v. Smith,* 430 U.S. 817, 821 (1977). Specifically, access to the courts is incorporated into the First Amendment right to petition the government for redress of grievances. *Driggers v. Cruz,* 740 F.3d 333, 336–37 (5th Cir. 2014) citing *Bill Johnson's Rests., Inc. v. N.L.R.B.,* 461 U.S. 731 (1983).

In its most obvious and fundamental manifestation, this right protects an inmate's physical access to the courts. Thus, for example, prison officials may not block or refuse to transmit, through procedural devices or otherwise, the transmission of legal documents that prisoners wish to send to the courts. *Ex parte Hull,* 312 U.S. 546 (1941) (striking down a state regulation prohibiting prisoners from filing petitions for habeas corpus without the approval of a state official); *Jackson v. Procunier,* 789 F.2d 307, 310–11 (5th Cir. 1986) (prison officials may not deliberately delay mailing legal papers when they know that such delay will effectively deny a prisoner access to the courts). Nor can they take other actions—such as confiscating or destroying legal papers—that

---

[2] Additionally, the plaintiff's claims appear to be prescribed. Inasmuch as there is no federal statute of limitations for claims brought pursuant to 42 U.S.C. § 1983, a federal court must borrow the forum state's general personal injury limitations period for such claims. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989). In Louisiana, the applicable period of limitations is one year. La. Civ. Code Art. 3492.[2] Moreover, under federal law, a cause of action under 42 U.S.C. § 1983 accrues "when the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof." *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995) (citations and internal quotation marks omitted). A plaintiff need not realize that a legal cause of action exists but must only have knowledge of the facts that support a claim. *Id.* In the instant matter, the plaintiff alleges his illegal sentence was imposed five years prior to the filing of his Complaint herein.

would have a similar effect. *See Foster v. City of Lake Jackson,* 28 F.3d 425, 429 (5th Cir. 1994), *citing Crowder v. Sinyard,* 884 F.2d 804, 811 (5th Cir.1 989). The fundamental constitutional right of access to the courts also requires that prison authorities assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith,* 430 U.S. 817, 828 (1977). This right extends to pretrial detainees as well as to convicted inmates. *Boyd v. Nowack,* 2010 WL 892995, *2 (E.D. La. March 11, 2010), *citing United States v. Moya–Gomez,* 860 F.2d 706, 743 (7th Cir. 1988). The right of access to the courts, however, "guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis v. Casey, supra,* 518 U.S. at 356.

Further, in order to prevail on a claim of interference with access to the courts, an inmate claimant must be able to show that has he suffered some cognizable legal prejudice or detriment as a result of the defendant's actions. *Eason v. Thaler,* 73 F.3d 1322, 1328 (5th Cir. 1996). In addition, the plaintiff must be able to show that the defendant had an intent to interfere with the plaintiff's right to submit pleadings to the courts or was otherwise deliberately indifferent to the plaintiff's wish to do so. *See Herrington v. Martin,* 2009 WL 5178340, *2 (W.D. La., Dec. 23, 2009) (recognizing that "[a]n 'access to courts' claim is actionable only if the deprivation stemmed from intentional conduct on the part of the defendant; 'access to courts' claims premised on a defendant's mere negligence or inadvertence are not cognizable under § 1983'").

Finally, an inmate's right to seek access to the courts is limited to the making of non-frivolous claims involving the assertion of legitimate constitutional rights. *Johnson v. Rodriguez,* 110 F.3d 299, 311 (5th Cir. 1997). Therefore, because the right to access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court," *Christopher v. Harbury,* 536 U.S. 403, 415 (2002),

"the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint." *Id.*

In the present matter, the Complaint as amended fails to state a claim for denial of access to the courts for several reasons. The Complaint is composed entirely of generalized allegations of denial of access. The plaintiff has not identified with specificity any particular cause of action in which his rights were impeded. Nor has the plaintiff alleged that the deprivations stemmed from intentional conduct on the part of defendants Cain and LeBlanc. As such, the Complaint fails to state a claim for denial of access to the courts.

With regards to the plaintiff's complaint against defendant Doug Welborn with regard to various fees required by the 19th Judicial District Court, the plaintiff does not allege that any action on the part of defendant Welborn affected the outcome of his state action in any way. Rather, the plaintiff alleges that "the clerk's office" refused to transfer his file to the state appellate court. Section 1983 provides for a private right of action against any person who, acting under color of state law, deprives an individual of rights, privileges, or immunities secured by the Constitution or laws of the United States. The "clerk's office" is not a person for purposes of section 1983. With regards to the plaintiff's claims that defendant Welborn also violated his rights to due process and equal protection, the plaintiff has not provided any factual basis for these claims.

Turning to the plaintiff's complaints regarding his conditions of confinement in the dorm to which he was assigned in June of 2017, the prohibition against cruel and unusual punishment mandates that prisoners be afforded humane conditions of confinement and that they receive adequate food, shelter, clothing and medical care. *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001). *See also Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (recognizing that "[t]he Constitution does not mandate comfortable prisons ... but neither does it permit inhumane ones"). However, a constitutional violation occurs only when two requirements are met. First, there is the

objective requirement that the condition "must be so serious as to 'deprive prisoners of the minimal civilized measure of life's necessities,' as when it denies the prisoner some basic human need." *Harris v. Angelina County, Texas*, 31 F.3d 331, 334 (5th Cir. 1994), *citing Wilson v. Seiter*, *supra,* 501 U.S. at 304.  Second, under a subjective standard, the Court must determine that the prison officials responsible for the deprivation have been "deliberately indifferent to inmate health or safety."  *Farmer v. Brennan,* 511 U.S. 825, 837 (1994); *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995).  In applying this standard, the determinative question is whether the defendant prison officials subjectively knew that the inmate plaintiff faced a substantial risk of serious harm yet disregarded that risk by failing to take reasonable steps to abate it.  *Farmer v. Brennan, supra*, 511 at 837.  Specifically, prison officials must be shown to have been personally aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and they also must be shown to have drawn the inference.  *Id.*  While some conditions of confinement may establish an Eighth Amendment violation "in combination," when each would not do so alone, this will occur only when those conditions have a mutually enforcing effect that produces the deprivation of a single, identifiable human need.  Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists. *Wilson v. Seiter, supra*, 501 U.S. at 305.  Further, conclusory allegations are not sufficient, and a plaintiff must present facts to support what are otherwise broad and conclusory allegations of wrongdoing.  *See Rougley v. GEO Group*, 2011 WL 7796488, *3 (W.D. La. Nov. 7, 2011).

With regards to the plaintiff's complaints of overcrowding, double-celling is constitutional, and overcrowding is not, by itself, a constitutional violation. *See Rhodes* v. *Chapman*, 452 U.S. 337, 348 ("The double celling made necessary by the unanticipated increase in prison population did not lead to deprivations of essential food, medical care of sanitation."); *Collins v. Ainsworth*, 382 F.3d

529, 539 (5th Cir. 2004) (Overcrowding of persons in custody is not *per se* unconstitutional."); *Ruiz v. Estelle (Ruiz II)*, 666 F.2d 854, 858 (5th Cir. 1982) ("The [l]ack of space alone does not constitute cruel and unusual punishment, save perhaps the most aggravated circumstances."). Moreover, there is no constitutional right to a single cell. *See, e.g.*, *Barber v. Quarterman*, 2010 WL 1417650 *9 (E.D. Tex.) (citing *Parker v. Currie*, 2010 WL 10924 (5th Cir. 2010) (inmate desired a single cell but was assigned to general population; no constitutional liberty interest infringed)).

As to the complained of odors, the Constitution does not mandate comfortable prisons and "to the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes*, 452 U.S. at 347. Simply put, the Constitution does not afford protection against mere discomfort or inconvenience. *See Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir. 1989). While the complained of odors may be unpleasant, such allegations do not constitute a constitutional violation. *See Farr v. Rodriguez,* 255 F. App'x. 925 (5th Cir. 2007) (claim of a "foul odor" caused by an inadequate ventilation system was an "inconvenience of prison life" which did not amount to the denial of the civilized measure of life's necessities or support an inference of deliberate indifference).

With regards to the plaintiff's allegations of an insufficient number of security personnel, the plaintiff does the plaintiff allege that he has been physically harmed in any manner due to the alleged lack of security personnel. Rather, the plaintiff asserts in a conclusory manner that the dorm is dangerous.

As to the plaintiff's complaints regarding environmental tobacco smoke, it is well-settled that inmates have a constitutional right against exposure to an excessive level second-hand smoke. In *Helling v. McKinney*, 509 U.S. 25, 33-35 (1993), the Supreme Court held that prison officials may violate the Eighth Amendment's prohibition against cruel and unusual punishment by exposing inmates to an excessive level of environmental tobacco smoke ("ETS"). To prove unconstitutional

prison conditions, inmates need not show that death or serious injury has already occurred; they need only show that there is a substantial risk of damage to his future health. *See Helling*, 509 U.S. at 35. Therefore, to obtain relief, a prisoner must prove not only that the level of ETS to which he is exposed is unreasonable (the "objective factor"), but also that prison officials have shown "deliberate indifference" to the health risks associated with second hand smoke (the "subjective factor"). *See Helling*, 509 U.S. at 35-36.

A prison official violates the Eighth Amendment's prohibition of cruel and unusual punishment if the official shows deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–06 (1976). The official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety" and "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists". *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The official also must draw that inference. *Id*.

In order for a prison official to be found liable under § 1983, the official must have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). Any allegation that the defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). *See also Bell v. Livingston*, 356 F. App'x. 715, 716–17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability"). Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must allege that the deprivation of his constitutional rights occurred as

a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law. *Lozano v. Smith*, *supra*, 718 F.2d at 768.

In the instant matter, the plaintiff has not alleged that he was exposed to unreasonable levels of ETS. Nor has the plaintiff alleged that any named defendant has been deliberately indifferent to his health risk associated with second hand smoke, or that the plaintiff's health is at risk in any way due to exposure to second hand smoke. Rather, the plaintiff complains primarily of the odor caused by inmates who smoke chewing tobacco, and the use of bible pages to make cigarettes. At best, the plaintiff's allegations are that of vicarious responsibility which are alone insufficient to state a claim under § 1983.

Turning to the plaintiff's complaints concerning the handling of his informal complaints, grievances regarding the allegedly unconstitutional conditions of confinement, and disciplinary proceedings following an attempted escape, an inmate does not have a constitutional right to have his prison disciplinary or administrative proceedings properly investigated, handled, or favorably resolved. *Mahogany v. Miller,* 252 F. App'x. 593, 595 (5th Cir. 2007), and there is no procedural due process right inherent in such a claim. As stated by the United States Court of Appeal for the Fifth Circuit in *Geiger v. Jowers,* 404 F.3d 371 (5th Cir. 2005) (in the context of the handling of an administrative grievance):

> Insofar as [the plaintiff] seeks relief regarding an alleged violation of his due process rights resulting from the prison grievance procedures, the district court did not err in dismissing his claim as frivolous…[The plaintiff] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless. *Id*. at 373-74.

This conclusion is equally applicable in the context of prison disciplinary proceedings. *See, e.g., Sanchez v. Grounds,* 2014 WL 1049164, *2 (E.D. Tex. Mar. 14, 2014) (finding that an inmate's claim regarding a failure to conduct a "proper investigation" of a disciplinary charge "did

not amount to a constitutional deprivation"); and *Jackson v. Mizell,* 2009 WL 1792774, *7 n.11 (E.D. La. June 23, 2009) (noting that "the Court fails to see how a prisoner could ever state a cognizable claim alleging an inadequate disciplinary investigation").

Further, the failure of prison officials to follow prison rules or regulations does not amount to a violation of the plaintiff's constitutional rights. *Jackson v. Cain*, 864 F.3d 1235, 1252 (5th Cir. 1989). Nor does this Court sit as some form of an appellate court to review errors made by state tribunals that do not affect an inmate's constitutional rights. *See, e.g., Coleman v. Director, TDCJ-CID,* 2009 WL 56947, *2 (E.D. Tex. Jan. 7, 2009) (noting, in the context of an inmate's habeas corpus proceeding arising out of a prison disciplinary proceeding, that "[i]n the course of reviewing state proceedings, a federal court does not sit as a super state appellate court.").

Moreover, in *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court noted that in some rare situations, an inmate may be entitled to procedural Due Process when state action exceeds the sentence in such an unexpected way as to give rise to protection by the Due Process Clause of its own force. Normally, however, the Due Process Clause, itself, does not afford an inmate a protected liberty interest that would entitle him to the procedural protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974). It is only those restrictions that impose "atypical and significant hardship[s] ... in relation to the ordinary incidents of prison life" that will invoke the prospect of state-created liberty interests. *Wilkinson v. Austin*, 545 U.S. 209, 222–23 (2005).

Thus, while *Sandin* made it clear that punishments that impact upon the duration of confinement, or which exceed the sentence in an unexpected manner, or that impose "atypical and significant hardship[s] ... in relation to the ordinary incidents of prison life" will give rise to the protection afforded by the Due Process Clause, more routine disciplinary action will not invoke this constitutional protection. *Sandin,* 515 U.S. at 484.

After being found guilty of simple escape, the plaintiff was sentenced to a custody status change. This punishment does not amount to disciplinary action that infringes upon a constitutionally protected liberty interest which would invoke the protection of the Due Process Clause of the Fourteenth Amendment. *See Dickerson v. Cain,* 241 F. App'x. 193 (5th Cir. 2007) (holding that the plaintiff failed to show that placement in Camp J at LSP presents "an atypical or significant hardship beyond the ordinary incidents of prison life"). The plaintiff's claim here likewise fails to make such a showing.

As to the plaintiff's complaints regarding his conditions of confinement in CCR beginning in October of 2018, the plaintiff states that he amended his Complaint to add these claims on or about June 25, 2019 once his grievance regarding the same had been exhausted. Pursuant to 42 U.S.C. § 1997e, the plaintiff was required to exhaust administrative remedies available to him at the prison prior to commencing a civil action in this Court with respect to these prison conditions. This provision is mandatory and applies broadly to "all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Failure to exhaust administrative remedies is an affirmative defense, and "inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). However, dismissal may be appropriate when, the complaint on its face establishes the inmate's failure to exhaust. *See Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007); *Hicks v. Lingle*, 370 F. App'x. 497, 498 (5th Cir. 2010).

The plaintiff specifically states that the claims presented in his supplemental pleading regarding the conditions of his confinement in CCR were not exhausted until June 25, 2019, nearly a year after the plaintiff filed his original Complaint. *See* R. Docs. 1 and 53. Accordingly, these claims should be dismissed without prejudice for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a).

Finally, to the extent that the plaintiff's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this court over potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367.  In the instant case, having recommended that the plaintiff's federal claims be dismissed, the Court further recommends that the exercise of supplemental jurisdiction be declined.

## RECOMMENDATION

It is recommended that the Court decline the exercise of supplemental jurisdiction over any potential state law claims.  It is further recommended that the plaintiff's claims regarding his conditions of confinement in CCR beginning in October of 2018 be dismissed without prejudice for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a).  It is further recommended that all other claims be dismissed with prejudice for failure to state a claim upon which relief may be granted pursuant to 1915A, and that this action be dismissed.  It is further recommended that all pending Motions be denied as moot.

Signed in Baton Rouge, Louisiana, on September 10, 2019.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**